## SMITH v. THE STATE.

1. Under the evidence in the case the crime of manslaughter was not involved; and the court did not err, after having instructed the jury upon the subject of manslaughter, in withdrawing from their consideration the portions of his charge relative to a homicide of that degree.
2. The evidence authorized the verdict.

OCTOBER 20, 1916.

Indictment for murder. Before Judge Hammond. Jenkins superior court. April 8, 1916.

*Thomas L. Hill,* for plaintiff in error.

*Clifford Walker, attorney-general, R. Lee Moore, solicitor-general,* and *Mark Bolding,* contra.

BECK, J. John Smith was tried under an indictment charging him with the offense of murder, it being alleged that he feloniously shot and killed one Lester Johnson. The jury returned a verdict of guilty, with a recommendation. The evidence shows that the accused and the decedent and other persons were, at the time of the fatal shooting, at the house of Lester Johnson. Both the accused and the decedent were drinking. According to certain witnesses for the State, the accused left the house and walked out in the yard, carrying a gun which belonged to Johnson, and after the exchange of a few words the gun fired and the decedent received a wound from which he died about two weeks later. The testimony of all the witnesses shows that the decedent had done nothing to provoke the killing. One of the witnesses for the State testified that the accused was drunk and cursing, but not cursing any one specially. He appeared to be drunk and had a gallon of whisky; both Johnson and Smith had whisky. The two had ordered a gallon of whisky, and they had about drunk up that which belonged to the decedent, and were drinking that of the accused. One Kelser, a witness introduced by the State, testified that when he was passing the house and was near the back gate, he heard loud cursing in or near the house. Some one asked the decedent, with an oath, if he didn't believe he would shoot him. This witness, believing that there was about to be a fight, moved off; and when he had gotten about 25 yards away from the house the gun fired, and the women were heard to scream. On cross-examination this witness testified positively that he heard the defendant say, on the occasion referred to above, "I'll shoot you."

The evidence was sufficient to authorize the jury to find the defendant guilty. It is true that apparently there was a lack of motive, but the evidence strongly indicates that the accused was drunk, and while in that condition killed the decedent. He was heard cursing the decedent and to say, "I'll shoot you,"—that is, if the witness Kelser is to be believed; and the jury were the judges of his credibility. The judgment of the court below refusing a new trial should not be disturbed on the ground that the verdict was without evidence to support it.

The exceptions to certain portions of the charge are without merit. One of the grounds of the motion for a new trial complains that the court, after having instructed the jury in reference to the law of manslaughter, had the jury recalled, and then said to them: "Upon reflection the court is of the opinion that it was error to charge you anything with reference to manslaughter in this case. All the court said on that question is withdrawn. The court does not believe the facts warranted the charge on the subject of manslaughter of any kind, and it would be the duty of the jury to declare the defendant innocent, or find him guilty of murder, with or without recommendation, as you shall see proper. The offense of manslaughter is not involved." The court did not err in withdrawing the instructions upon the subject of manslaughter. The homicide was either willful murder or an accident. The theory of accident is set up in the defendant's statement, which was to the effect that, after exchanging a few words with the decedent in reference to firing their guns as the others were doing, he came out of the house to go home, saying to his wife that they would now go; that he started home with the decedent's gun, and the latter came to the window and was talking;—concluding what he had to say with the statement, "Me and him was talking, and I was starting on home, and the gun fired off somehow. I don't know how. I wasn't mad with him a bit, and I didn't have nothing against him." The judge gave the defendant, in his instructions to the jury, the benefit of the theory that the shooting was accidental and unintentional, charging in substance the provision of § 40 of the Penal Code, which relates to a crime or misdemeanor committed by misfortune or accident, where it appears there was no evil design or intention or culpable neglect.

*Judgment affirmed. All the Justices concur.*