[No. 3206.   Feb. 6, 1928.   Rehearing Denied
May 2, 1928.]

## STATE v. VIGIL.

[266 Pac. 920.]

D. J. Leahy, of East Las Vegas, for appellant.

Robert C. Dow, Atty. Gen., and Frank H. Patton, Asst.
Atty. Gen., for the State.

### OPINION OF THE COURT

WATSON, J.   Dominico Vigil appeals from a convic-
tion of murder in the second degree for the killing of
Daniel Duran.

Objection is urged to the overruling of appel-
lant's challenges to three jurors, because ·entertaining
opinions as to guilt or innocence.   It is not directly con-
tended that such opinions are necessarily disclosed by their
voir dire examinations.   But it is pointed out that there

is no substantial difference between the answers of these jurors and those made by another who was excused on the court's own motion, over appellant's objection. The point made is that the court's rulings were so inconsistent as to show prejudice against appellant. As it seems to us, the law is the standard by which the rulings must be judged. Some other ruling in the case is not a correct criterion. Without having the advantage of observing the demeanor of the jurors under examination, we are not in a position to judge as to their intelligence or sincerity, and cannot say that the rulings were in fact inconsistent.

The next attack is directed to the information which recites "that Dominico Vigil now in this form here held to answer for the crime charged herein, after having waived the preliminary examination therefor before an examining magistrate," etc. It is contended that the recital is insufficient to show that appellant had or waived preliminary examination before a committing magistrate, as required by article 2, § 14, of the Constitution, as amended in 1923 (see Laws 1923, p. 351). The point was raised, first, by objection to any testimony on the part of the state, and, later, by motion to dismiss at the close of the state's case. The point is without merit, since we held in State v. Rogers, 31 N. M. 485, 247 P. 828, that the state need not allege or prove that the accused has had a preliminary hearing, but that, if he has not been allowed or waived such hearing, it is a matter of defense to be raised by plea in abatement or other appropriate remedy.

Appellant, in the course of his defense, offered the testimony of the clerk of the court which he contends shows lack of a sufficient record of a preliminary examination or a waiver thereof. Thereupon he again moved to dismiss, and now complains of the overruling of the motion. We do not think the point well taken. The Constitution provides that no person shall be held to answer for a capital, felonious, or infamous crime on information without having had or waived a preliminary examination. The examination is entirely foreign to the crime and to the question of guilt or innocence. Hence, as we have

already decided, it need not be alleged or proved. The constitutional right is a guaranty against being held to answer. If, when called upon to answer, that is to plead, it is objected that there has been no preliminary examination or waiver thereof, the fact must be determined to the contrary before the accused can be required to plead. That is all the Constitution requires. It being a right which may be waived, it may be waived at one time as well as at another. When the accused is arraigned, if he makes no objection, but pleads not guilty, he must be held to have waived examination, if he has not already received one. To permit such objection to be interposed after jeopardy had attached would open a door to great abuse in the administration of justice. The Constitution does not require it, and it is against sound policy and the liberal spirit of the constitutional amendment and of the procedural statute (Laws 1925, c. 145.)

■ The next point is as to the sufficiency of the evidence to support the verdict. It is thus stated in the brief:

"The evidence in this case establishing self-defense preponderated so strongly in favor of appellant that the guilt of appellant was not shown by any substantial evidence upon which to base a verdict of guilty, and the court erred in overruling appellant's motion to dismiss, made when all of the evidence had been presented."

Appellant admitted the homicide, and claimed self-defense. There were no eyewitnesses of the killing. It was, in our judgment, for the jury to decide the issue of self-defense from all the facts and circumstances shown. Appellant might well have argued to the jury that there was a preponderance of evidence in favor of his plea, or that the state had failed to satisfy the burden of proof beyond a reasonable doubt. But such is not the question here. There is substantial evidence to support the verdict. Beyond that we do not inquire. State v. Pennington, 28 N. M. 543, 215 P. 815, is cited. That case is different, both in law and in fact. It was a stronger case of self-defense than this. Yet this court held that, but for the Attorney General's concession that the preponderance of evidence supported the plea, "we would feel bound

to affirm this judgment upon the theory that it was for the jury to determine where, beyond a reasonable doubt, the truth in the matter lay."

Immediately after the jury had been sworn to make deliverance, the court remarked:

"I understand this information charges murder in the first degree."

The district attorney replied:

"Yes, your honor; but the state is not going to insist on that."

At the close of the testimony it was agreed that the jury should be charged, and that the court should then adjourn until the next day, when the arguments of counsel should be had. The court then charged the jury:

"The state of New Mexico, through her district attorney, has stated to the court that he will not ask a verdict against the defendant in the first degree or in the second degree, but will ask for a verdict of voluntary manslaughter. Consequently, you will not consider in this case whether or not the defendant is guilty of murder in the first degree or murder in the second degree. You will only consider whether or not the defendant is guilty of voluntary manslaughter or not guilty of voluntary manslaughter."

He then gave the appropriate instructions for submitting manslaughter only. The court then placed the jury in the custody of the bailiffs until the next morning, warning them against any discussion and against forming opinions as to the guilt or innocence of the accused until after argument of counsel and final submission. The jury having retired, appellant moved the court for an instructed verdict of not guilty upon the ground that there was no substantial evidence in the case to support a verdict of manslaughter, and that all other charges in the indictment had been dismissed. The district attorney, upon being appealed to by the court, stated:

"I have nothing to say. I think the court has given the proper instructions under the facts in the case."

The court remarked:

"The only question in my mind is whether or not I can reinstruct the jury on second degree."

The next morning the court announced to counsel that

he was about to withdraw the instructions on manslaughter and to give new instruction on murder in the first and second degrees. In opposing this procedure appellant waived the right of argument to the jury, pointing out that the district attorney had previously done so. He contended that under these circumstances the instructions already given constituted a complete submission of the cause. The trial judge pointed out that he had announced his intention to change his instructions before counsel for appellant had waived the argument.

It is contended that the original instructions amounted to a dismissal of the cause as to murder in both degrees, and that the later instructions amount to placing appellant a second time in jeopardy. That appellant was once in jeopardy is to be admitted, but that he was twice in jeopardy is not so clear. Cases, including U. S. v. Aurandt, 15 N. M. 292, 107 P. 1064, 27 L. R. A. (N. S.) 1181, are cited to the proposition that a nolle, entered after jury sworn and evidence taken, constitutes an acquittal from jeopardy. In those cases, however, the jury, once charged with the deliverance of the accused, had actually been discharged. They are not in point here. Had the jury in the case at bar actually proceeded to a verdict, there would have been deliverance, and the accused would then have been in a position to plead former jeopardy. In fact, however, the cause had not been finally submitted to the jury, and it had been warned not to take up consideration of the case until later. The right of the court to withdraw erroneous instructions, and to give correct ones in their place, is generally recognized. Blashfield says:

"* * * It may be stated that where erroneous instructions have been given to the jury, it is well settled that the court may, at any time before verdict, either of its own motion or at the request of parties, withdraw or amend and correct such instructions." Instructions to Juries, § 226.

Thompson says:

"* * * It has been held that, where an erroneous instruction is given, and the judge, on discovering the error, withdraws it from the jury and gives them the correct instruction in its place, no ground is afforded for reversing the judgment; and this, it seems, may be properly done, at any time before the jury return their verdict." Trials, § 2353.

We find that this principle has been applied in many cases, both civil and criminal. No case exactly like this has been called to our attention, but among those most suggestive we cite Smith v. State, 146 Ga. 36, 90 S. E. 475; McDonald v. Commonwealth, 173 Mass. 322, 53 N. E. 874, 73 Am. St. Rep. 293; Lott v. State, 60 Tex. Cr. R. 162, 131 S. W. 553; State v. Derry, 118 Me. 431, 108 A. 568; Apolinar v. State, 92 Tex. Cr. R. 583, 244 S. W. 813. We think that the principle is applicable to the situation existing in the present case, and that there was no error in the procedure.

The judgment must be affirmed.

It is so ordered.

PARKER, C. J., and BICKLEY, J., concur.